J-A17019-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KAI KPAAN | |
| Appellant | No. 2469 EDA 2013 |

Appeal from the Judgment of Sentence June 17, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014452-2011

BEFORE:  GANTMAN, P.J., PANELLA, J., and STABILE, J.

MEMORANDUM BY PANELLA, J.                 **FILED NOVEMBER 19, 2014**

Appellant, Kai Kpaan, appeals from the judgment of sentence entered June 17, 2013, by the Honorable Barbara A. McDermott, Court of Common Pleas of Philadelphia County.  We affirm.

We take the underlying facts in this matter from the trial court's October 18, 2013, opinion.

> On the morning of November 10, 2011, Eunice Beyan drove to a Philadelphia-area [p]ost [o]ffice near 2900 S. 70th street in her mother's Nissan Altima.  She went into the post office, and when she came out again, at approximately 10:45 a.m., she sat in the car and began entering the information for her next destination into her navigation device.  As she was doing so, [Kpaan] opened the car door and held a gun to her side.  He told Beyan to put the key in the ignition and get out of the car.  Because this particular model of vehicle did not have a traditional key ignition, Beyan said she could not do that. [Kpaan] said "Do you think I'm playing with you?  I'll shoot you.  Put the key in the ignition."  When it became clear that this was not possible, he ordered her out of the car and attempted to start it.  He was unable to do so, and he then ordered her back

into the car in order to start the engine. Beyan started the car, and as she was relinquishing the driver's seat to [Kpaan], she reached for her purse. [Kpaan] told her to leave everything in the car and go. She left her purse, wallet, and cellular phone in her vehicle, and walked away. [Kpaan] told her "don't look back." N.T. April 15, 2013, pp. 45-52; Commw. Exh. 1.

During the investigation, Beyan called T-Mobile, her cellular service provider, to find out whether it was possible to track the location of her phone. They informed her that it was not, but she logged into her T-Mobile account and noticed some calls made after her phone was stolen. She gave the phone numbers of those calls to the investigating detective. *Id*. at 56-57.

On November 11, 2011, the day after the robbery, a detective came to Beyan's home and showed her a photo array containing eight photographs, one of which depicted [Kpaan]. She circled [Kpaan's] picture, and wrote underneath it her name, the date, the time, and "100% sure (no doubt)". This photo array, thus marked, became Commonwealth Exhibit 11. After she identified [Kpaan], her immediate family members looked at his photograph. *Id*. at 57-61.

On the night of November 20, 2011, Beyan went to the scene of a party to identify [Kpaan], after her stepbrother told her stepfather that he had seen [Kpaan] at the party. Police officers met Beyan and her stepfather at the party, where a bouncer brought [Kpaan] outside to Beyan, who identified him as the man who robbed her. The officers then attempted to take him into custody, but [Kpaan] ran. The officers gave chase, and after [Kpaan] was caught, Beyan was taken to that location where she identified him again. *Id*. at 61-68.

[Kpaan was arrested and charged with Robbery, Robbery of a Motor Vehicle, Terroristic Threats, Simple Assault, Reckless Endangerment of Another Person (REAP), Possession of an Instrument of Crime, and numerous firearm charges. At trial,] Detective Vincent Parker testified that he was given the phone numbers that had been called on Beyan's cell phone after the robbery, and that when he called one of them, a female individual who identified herself as Alexis Rivera answered the phone. He met with Rivera, and later prepared warrants for Beyan's phone records as well as Rivera's. Those records

confirmed that at 11:20 a.m. on the day of the robbery, Beyan's phone was used to call Rivera. *Id*. at 92-104.

Teresa Paris, Custodian of Records for the Philadelphia State Prison, keeps records of visits to incarcerated people. She confirmed that Alexis Rivera had visited [Kpaan] on 21 occasions during his pretrial detention. *Id*. at 153-158. On April 15, 2013, Alexis Rivera came to the Criminal Justice Center, as she had been subpoenaed to testify. According to Detective Parker, Ms. Rivera had been waiting in the hallway outside the courtroom where the proceedings were held, and she was crying, shaking, and speaking loudly. When Parker met her in the hallway, she told him that she was going to the bathroom, and then she left the area and did not return. *Id*. at 110-112.

The defense presented alibi witness Margaret Kpaan, [Appellant's] mother, who testified that [Kpaan] was at home all day on the day of the robbery, and that at the time of the robbery, he wore a goatee and a moustache. *Id*. at 167-172. Beyan had told the police that the person who robbed her was clean-shaven. *Id*. at 73.

\* \* \*

Trial Court Opinion, 10/18/13 at 2-4.

On April 16, 2013, a jury convicted Kpaan of all charges.[1] On June 17, 2013, the trial court imposed an aggregate term of 7½ to 25 years' imprisonment. This appeal followed.

Kpaan raises the following issues for our review.

A. Whether the court erred in denying that the evidence of visits to [Kpaan] in prison by a person allegedly named Alexis Rivera, coupled with the hearsay testimony that a person also named Alexis Rivera received a phone call from the victim's cell phone shortly after the robbery, without any testimony by

---

[1] The Simple Assault and REAP charges were nolle prossed, and the trial court additionally convicted Kpaan of Persons not to Possess Firearms.

any person named Alexis Rivera at trial, was more prejudicial than probative?

B. Whether it was error for the court below to allow the prosecution to bolster its purported identification evidence by showing that [Kpaan] ran away from police on seeing them outside a bar, while denying the defense any opportunity to show reasons why he would do so, independent of any "consciousness of guilt"? Thus, the court invited the jury to draw the inference that [Kpaan's] "flight" alone, was enough to allow police, and the law, to infer "probable cause of guilt.["]

C. Whether the contradictory identification testimony as to whether the robber had face hair or was smooth shaven necessitated a "Kloiber" instruction to the jury?

D. Whether it was error, and an abuse of discretion, for the court to allow [Kpaan's] identification photograph upon which the complainant had hand-written virtually the same words to which she testified, about her "certainty" of [Kpaan's] identification, to be given to the jury for review during deliberation, thus permitting the jury to have the equivalent of a transcript of the complainant's trial testimony during deliberations?

Appellant's Brief at 2 (unnecessary capitalization omitted).

Preliminarily, we note that issues B. and C. Kpaan now raises on appeal were not included in the court-ordered Rule 1925(b) Statement of Matters Complained of on Appeal filed on October 15, 2013. Rule 1925(b)(4)(vii) explicitly states that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." In **Commonwealth v. Lord**, 553 Pa. 415, 719 A.2d 306 (1998), the Pennsylvania Supreme Court reaffirmed the principle that any issues not raised in a Rule 1925(b) statement will be deemed waived. 553 Pa. at 420, 719 A.2d at 309. We are therefore constrained to find that

Kpaan has waived issues B. and C. by failing to raise them in his court-ordered 1925(b) statement.

We proceed to address the remaining issues Kpaan has preserved on appeal. With our standards of review in mind, we have examined the certified record, the briefs of the parties, Judge McDermott's memorandum opinion, and the applicable law, and we find that the lower court ably and methodically addressed the issues Kpaan presented on appeal.[2] Accordingly, we affirm on the basis of Judge McDermott's memorandum opinion. **See** Trial Court Opinion, 10/18/13.

Judgment of sentence affirmed.
Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/19/2014

_____

[2] The trial court additionally addresses a third issue regarding the Commonwealth's cross-examination of Kpaan's mother. As Kpaan has not included this issue in his appellate brief, we find that he has abandoned this issue on appeal.

COMMONWEALTH OF PENNSYLVANIA     : CP-51-CR-0014452-2011

 

        v.                    : 2469 EDA 2013

 

KAI KPAAN

FILED
OCT 18 2013
Criminal Appeals Unit
First Judicial District of PA

## OPINION

**McDermott, J.**                                  **October 18, 2013**

### Procedural History

On December 5, 2011, the defendant, Kai Kpaan, was arrested and charged with Robbery, Robbery of a Motor Vehicle, Terroristic Threats, Simple Assault, Reckless Endangerment of Another Person ("REAP"), Possession of an Instrument of Crime ("PIC") and related firearms charges. On April 12, 2013, the defendant appeared before this Court and elected to be tried by a jury. On April 16, 2013, the jury returned a verdict of guilty as to Robbery, Robbery of a Motor Vehicle, Carrying a Firearm Without a License, Carrying a Firearm in Philadelphia, PIC, and Terroristic Threats. The Simple Assault and REAP charges were nolle prossed; and this Court convicted the defendant of Persons not to Possess Firearms at the close of the jury trial.

Sentencing was deferred for preparation and review of a presentence report and mental health evaluation. On June 17, 2013, this Court sentenced the defendant to five to twenty years as to Robbery and Robbery of a Motor Vehicle, to run concurrently to one another, with two and

A

one-half to five years of incarceration each for Carrying a Firearm Without a License and Carrying a Firearm in Philadelphia, to run consecutively to the Robbery sentences, with no further penalty on the remaining charges, for an aggregate term of incarceration of seven and one-half to twenty years.

On July 15, 2013, the defendant filed a notice of appeal. However, defense counsel did not serve this Court, and this Court was not notified of the appeal until August 30, 2013. On September 12, 2013, this Court held a hearing in which defense counsel was permitted to withdraw after being informed of this Court's expectations as to appeal procedures. On September 17, 2013, after appointment of appellate counsel, this Court filed an order pursuant to Pa.R.A.P. 1925(b). On October 8, 2013, the defendant made a letter request for additional time in which to file a timely Statement of Matters Complained of on Appeal, which this Court granted by order that same day. On October 15, 2013, the defendant filed a timely Statement.[1]

**Facts**

On the morning of November 10, 2011, Eunice Beyan drove to a Philadelphia-area Post Office near 2900 S. 70th Street in her mother's Nissan Altima. She went into the post office, and when she came out again, at approximately 10:45 a.m., she sat in the car and began entering the information for her next destination into her navigation device. As she was doing so, the defendant opened the car door and held a gun to her side. He told Beyan to put the key in the ignition and get out of the car. Because this particular model of vehicle did not have a traditional key ignition, Beyan said that she could not do that. The defendant said "Do you think I'm playing with you? I'll shoot you. Put the key in the ignition." When it became clear that this

---

[1] In that Statement, the defendant alleges that the notes from the defendant's sentencing were not available at the time the Statement was prepared. This is not accurate. In fact, the sentencing notes became available on October 3, 2013. When this Court's law clerk spoke with counsel on October 8, 2013, he informed counsel that all notes, including the notes from sentencing, were currently available.

2

was not possible, he ordered her out of the car and attempted to start it. He was unable to do so, and he then ordered her back into the car in order to start the engine. Beyan started the car, and as she was relinquishing the driver's seat to the defendant, she reached for her purse. The defendant told her to leave everything in the car and go. She left her purse, wallet, and cellular phone in the vehicle, and walked away. The defendant told her "don't look back." N.T. April 15, 2013, pp. 45-52; Commw. Exh. 1.

During the investigation, Beyan called T-Mobile, her cellular service provider, to find out whether it was possible to track the location of her phone. They informed her that it was not, but she logged into her T-Mobile account and noticed some calls made after her phone was stolen. She gave the phone numbers of those calls to the investigating detective. *Id.* at 56-57.

On November 11, 2011, the day after the robbery, a detective came to Beyan's home and showed her a photo array containing eight photographs, one of which depicted the defendant. She circled the defendant's picture, and wrote underneath it her name, the date, the time, and "100% sure (no doubt)". This photo array, thus marked, became Commonwealth Exhibit 11. After she identified the defendant, her immediate family members looked at his photograph. *Id.* at 57-61.

On the night of November 20, 2011, Beyan went to the scene of a party to identify the defendant, after her stepbrother told her stepfather that he had seen the defendant at the party. Police officers met Beyan and her stepfather at the party, where a bouncer brought the defendant outside to Beyan, who identified him as the man who robbed her. The officers then attempted to take him into custody, and the defendant ran. The officers gave chase, and after the defendant was caught, Beyan was taken to that location where she identified him again. *Id.* at 61-68.

3

Detective Vincent Parker testified that he was given the phone numbers that had been called on Beyan's cell phone after the robbery, and that when he called one of them, a female individual who identified herself as Alexis Rivera answered the phone. He met with Rivera, and later prepared warrants for Beyan's phone records as well as Rivera's. Those records confirmed that at 11:20 a.m. on the day of the robbery, Beyan's phone was used to call Rivera. *Id.* at 92-104.

Teresa Paris, Custodian of Records for the Philadelphia Prison System, keeps records of visits to incarcerated people. She confirmed that Alexis Rivera had visited the defendant on 21 occasions during his pretrial detention. *Id.* at 153-158. On April 15, 2013, Alexis Rivera came to the Criminal Justice Center, as she had been subpoenaed to testify. According to Detective Parker, Ms. Rivera had been waiting in the hallway outside the courtroom where these proceedings were held, and she was crying, shaking, and speaking loudly. When Parker met her in the hallway, she told him that she was going to the bathroom, and then she left the area and did not return. *Id.* at 110-112.

The defense presented alibi witness Margaret Kpaan, the defendant's mother, who testified that the defendant was at home all day on the day of the robbery, and that at the time of the robbery, he wore a goatee and a moustache. *Id.* at 167-172. Beyan had told the police that the person who robbed her was clean-shaven. *Id.* at 73. During cross-examination, the Commonwealth asked Ms. Kpaan whether she could remember the date when the defendant graduated from high school, over defense objection. She could not remember that date. *Id.* at 191.

4

**Issues**

On appeal, the defendant argues that this Court erred in admitting evidence related to Alexis Rivera, as she did not testify, and to allow the Commonwealth to cross-examine Ms. Kpaan as to her memory. The defendant further argues that this Court erred in allowing the photo array in which the victim identified the defendant to be sent back to the jury during deliberations.

Alexis Rivera

The defendant makes two claims relating to Alexis Rivera: first, that the defendant was prejudiced impermissibly by the introduction of evidence raising the presumption that the Alexis Rivera who was called from Beyan's phone after the robbery was the same Alexis Rivera who visited the defendant on multiple occasions while he was in custody, and second, that the defendant was prejudiced impermissibly by Detective Parker's testimony as to the conduct of Alexis Parker in the hallway at the Criminal Justice Center during trial. No relief is due.

Admissibility of evidence is a matter addressed to the sound discretion of the trial court, and will only be reversed by an appellate court for an abuse of discretion. *Commonwealth v. Claypool*, 495 A.2d 176, 178 (Pa. 1985)(citations omitted). "An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." *Commonwealth v. Hoover*, 16 A.3d 1148, 1150 (Pa. Super. 2011). In determining whether evidence should be admitted, the trial court must weigh the relevance and probative value of the evidence against the prejudicial impact of that evidence. *Commonwealth v. Reid*, 811 A.2d 530 (Pa. 2002), rearg. denied, cert. denied, 124 S.Ct. 131, 540 U.S. 850, 157 L.Ed.2d 92 (2003).

5

Here, the defendant has made no specific allegation that the admission of evidence that someone named Alexis Rivera was called on the victim's cell phone after the robbery and that someone named Alexis Rivera visited the defendant over twenty times during his pretrial incarceration violates any particular rule of evidence. The gist of his argument appears to be that the evidence is more prejudicial than probative, although at times it sounds like a confrontation claim or a hearsay claim. Of course, it is always prejudicial to defendants when evidence tending to prove their guilt is admitted at trial. However, the relevant test is not whether the evidence is prejudicial; if it were, then prosecution would be impossible as all evidence tending to prove guilt would be inadmissible. Under Pa.R.E. 403, trial courts must balance the probative value of evidence against the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

The defense attempts to allege that the person who answered the phone number from the victim's phone was perhaps not actually named Alexis Rivera as this declaration was "purely the product of hearsay," Detective Parker's statement that he had spoken to someone who identified herself as Alexis Rivera was important to explain the course that his investigation took. Her identity is further confirmed by the fact that Detective Parker also saw her at the Criminal Justice Center, where she was to testify in this trial after having been subpoenaed by name. This evidence is patently relevant, and its probative value far outweighs any impermissible prejudice that it might cause. Any doubt as to whether the Alexis Rivera known to Detective Parker is the *same* Alexis Rivera that visited the defendant over twenty times in prison goes to weight rather than the admissibility of the evidence. The defense was permitted to make an argument that these were two distinct Alexis Riveras, and that the Commonwealth had not made its case to the contrary. This argument is meritless.

6

The defendant also argues that this Court erred in allowing Detective Parker testify that he had seen Alexis Rivera in the hallway outside of the courtroom during these proceedings, and that she was upset, she was crying, she was shaking, and she was loud. The defense argues that this evidence linked the defendant with a "bad" person and that it was very prejudicial but not very probative. Although Detective Parker did testify that Rivera was loud, he in no way said or implied that this was related to any bad behavior. His testimony as to Rivera's affect was relevant in that it showed that she was very upset, and helped to explain why she evaded the subpoena to testify. It is simply not true that this testimony painted Rivera in a bad light.

Parker also testified that Rivera had told him that she was going to the restroom, and that after that moment he had not seen her, though he and other officers spent approximately ten minutes looking for her. Likewise, this testimony was important in order to show the jury that the Commonwealth had made all appropriate efforts to secure Rivera's testimony. In fact, Parker's testimony was likely to the defendant's advantage, as it dispelled any implication that Rivera would not testify out of fear of the defendant or because she had been threatened by him, instead supporting the theory that she had evaded the witness stand because she simply did not want to testify for the Commonwealth in this matter, as she found that prospect personally distressing.

This evidence was also important for the Commonwealth, which might have been subject to a defense motion for a missing witness instruction in the absence of appropriate evidence establishing its efforts to deliver Rivera's testimony. "When a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not merely be cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference that it would have been

7

"unfavorable." *Commonwealth v. Manigault*, 462 A.2d 239, 241 (Pa. 1983) (quotations, citations and emphasis omitted); *see also Commonwealth v. Boyle*, 733 A.2d 633, 638 (Pa. Super. 1999)(quoting and applying *Manigault*). Given the important role Rivera played in the Commonwealth's theory of the case, it would have been unfair not to allow the Commonwealth to show that it had made all appropriate efforts to present Rivera's testimony. This argument is meritless.

Cross-Examination of the Defendant's Alibi Witness

The defense argues that this Court erred in permitting the Commonwealth, during cross-examination of the defendant's mother and alibi witness, to ask her whether she remembered when the defendant graduated from high school. Given that the defendant turned eighteen five days after the robbery, the date of his graduation from high school would presumably have been near the relevant time frame. The defense argues that such cross-examination was not relevant and was an unfair test of the witness' credibility. No relief is due.

Under Pa.R.E. 607, "[a]ny party, including the party that called the witness, may attack the witness's credibility." Further, "The credibility of a witness may be impeached by any evidence relevant to that issue, except as otherwise provided by statute or these rules." The defendant fails to cite any statute or rule that would forbid examination as to a witness' credibility when she claims to remember the details of a day one and one-half years prior that was in all respects *at that time* indistinguishable from any other day.

In fact, this line of questioning led the witness to reveal that she had been on powerful medications in the past that affected her ability to remember. "[The Supreme Court] has consistently held that 'intoxication on the part of a witness at the time of an occurrence about which he has testified is a proper matter for the jury's consideration.'" *Commonwealth v. Harris*,

8

388, 852 A.2d 1168, 1174 (Pa. 2004)(citing *Commonwealth v. Small*, 741 A.2d 666, 677 (Pa. 1999), and clarifying scope of proper cross-examination as to intoxication and drug use). Given that the witness acknowledged that she had been prescribed medication that was very strong and that affected her ability to remember, and that she acknowledged using that medication at times that were relevant to her testimony in this matter, this was an appropriate subject of cross-examination. It was directly relevant to exploring her ability to recall the events of the day of the robbery, which she described as a quotidian day in the life of her household and which took place approximately one and one-half years prior to the day when she testified. Further, under *Harris* and *Small*, such cross-examination was clearly appropriate and is not, as the defendant argues, "an unfair test of an alibi witness' credibility." This argument is meritless.

Commonwealth Exhibit C-11

Finally, the defendant argues that this Court erred in allowing the jury to see Commonwealth Exhibit C-11, a photo array upon which the victim drew a circle around the defendant's photograph, signed the identification, wrote the date and time, and wrote "100% sure (no doubt)." The jury asked to see this exhibit in its first set of questions for the Court, and at the time this Court sent it back, there was no defense objection. See N.T. April 16, 2013, p. 40. Thus, this claim of error is not preserved.

However, even if this claim were preserved, it would be meritless. Under Pa.R.Crim.P. 646, victim statements are permitted to be sent into the possession of the jury during deliberations. *See, e.g., Commonwealth v. Causey*, 833 A.2d 165, 178 (Pa. Super. 2003), alloc. denied, 848 A.2d 927 (Pa. 2004)(under Rule 646, "a prosecution witness's statement entered into trial evidence as an exhibit may be sent out to the jury."). Given that the victim's identification of the defendant was important to the Commonwealth's case and was explicitly put into question

9

by defense cross-examination, it was appropriate for this Court to send the identification back to the jury. This argument is meritless.

For the foregoing reasons, the decision of this Court should be affirmed.

BY THE COURT,

_____
Barbara A. McDermott, J.

10